ACCEPTED
03-15-00226-CV
6570038
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/19/2015 4:26:24 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00226-CV**

_____

IN THE
THIRD COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

8/19/2015 4:26:24 PM

JEFFREY D. KYLE
Clerk

_____

TEXAS HEALTH AND HUMAN SERVICES COMMISSION,
*Appellant,*

v.

LINDA PUGLISI,

*Appellee.*

_____

On Appeal From
The 53rd Judicial District Court of Travis County, Texas
Trial Court Case No. D-1-GN-14-000381
The Honorable Judge Gisela D. Trianna

_____

**APPELLEE'S SUR-REPLY**

_____

MAUREEN O'CONNELL
Texas Bar No. 00795949
SOUTHERN DISABILITY LAW CENTER
1307 Payne Avenue
Austin, Texas 78757
T: 512.458.5800
F: 512.458.5850
moconnell458@gmail.com

*Attorney for Appellee*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ................................................................................................................1

    A.   HHSC Identifies No Credible Authority to Support its Notion of "Covered DME" ..................................................................................1

    B.   Linda Puglisi's Medical Need for the Recommended Wheelchair is not Diminished by the Severity of her Disability ................................................................................................3

    C.   State Law Governing the Order of Payment for Dually-Eligible Beneficiaries Has no Bearing on this Case ......................................4

    D.   HHSC's Hearing Decision is Unsupported by Substantial Evidence ..........................................................................................6

    E.   Neither *Detgen* nor the *DeSario* Letter Supports HHSC's Hearing Decision in this Case ...............................................................8

    F.   HHSC Denied Linda Puglisi's Due Process Rights....................................10

PRAYER .....................................................................................................................11

CERTIFICATE OF COMPLIANCE.........................................................................12

CERTIFICATE OF SERVICE ..................................................................................12

i

# TABLE OF AUTHORITIES

## CASES

*DeSario v. Thomas*,
    139 F.3d 80 (2d Cir. 1998) ........................................................................2, 8

*Detgen v. Janek*,
    945 F. Supp. 2d 746 (N.D. Tex. 2013) ......................................................8, 9

*Lankford v. Sherman*,
    451 F.3d 496 (8th Cir. 2006) ...................................................................3, 9

*Slekis v. Thomas*,
    525 U.S. 1098 (1999)...................................................................................2

## REGULATIONS

1 TEX. ADMIN. CODE § 354.1039(a)(4)(D) ..................................................9

1 TEX. ADMIN. CODE § 354.1041 ................................................................4

42 C.F.R. § 440.240(b) ..............................................................................3

## STATUTES

42 U.S.C. § 1396a(a)(10)(B)......................................................................3

TEX. HUM. RES. CODE § 32.050(b) ..........................................................5

TEX. HUM. RES. CODE § 32.0424 ............................................................4

TEX. HUM. RES. CODE § 32.0425 ..........................................................3, 8

## OTHER AUTHORITIES

Texas Medicaid Provider's Procedure Manual §2.3.1.2...........................5

Texas Medicaid Provider's Procedure Manual §2.3.1.3...........................5

_____

IN THE
THIRD COURT OF APPEALS
AUSTIN, TEXAS

_____

TEXAS HEALTH AND HUMAN SERVICES COMMISSION,
*Appellant,*

v.

LINDA PUGLISI,

*Appellee.*

_____

On Appeal From
The 53rd Judicial District Court of Travis County, Texas
Trial Court Case No. D-1-GN-14-000381
The Honorable Judge Gisela D. Trianna

_____

**APPELLEE'S SUR-REPLY**
_____

TO THE HONORABLE COURT OF APPEAL:

Appellee, Linda Puglisi, respectfully files this Sur-Reply to correct several

factual and legal inaccuracies contained within Appellant's Reply Brief.

**ARGUMENT**

**A.     HHSC Identifies No Credible Authority to Support its Notion of
        "Covered DME."**

The Texas Health and Human Services Commission (HHSC) acknowledges

that "the power wheelchair, the integrated standing feature, and the power seat

1

systems are all defined as DME." Appellant's Reply Brief, p. 2. HHSC also acknowledges that CMS advised the agency in May 2013 that items of medical equipment meeting the state's definition of durable medical equipment (DME) are covered and reimbursable through the Medicaid home health benefit. Appellant's Brief, p. 30; Appellee's Brief, App.1. Nonetheless, HHSC claims that an integrated standing feature is not covered by Medicaid because it does not meet the state's definition of "covered DME." Appellant's Reply Brief, p.2. Notably absent from this argument is any definition of the term "covered DME," any ascertainable standard for distinguishing "covered DME" from other DME, or any legal support for the distinction that HHSC now attempts to make. While HHSC claims the process for defining "covered DME" is described in its initial brief, Appellant's Reply Brief, p.2., no such process or definitions are identified therein. Moreover, the only legal support offered by HHSC for this distinction is the Second Circuit's decision in *DeSario v. Thomas.* 139 F.3d 80 (2d Cir. 1996), *cert. granted, decision vacated and remanded sub nom*, *Slekis v. Thomas*, 525 U.S. 1098 (1999). However, this decision was vacated by the U.S. Supreme Court based upon federal policy concerning DME coverage and this guidance provides no support for the distinction HHSC attempts to make. Appellant's Brief, App. 6.

Contrary to HHSC's contention, there is nothing "misleading" about Linda Puglisi's position that the test for Medicaid coverage of an integrated standing

2

feature is whether it meets the state's definition of DME. Dozens of judicial decisions and CMS policy guidance all establish the accuracy of this test for DME coverage. Appellee's Brief, pp. 35-44. Nor is there any question that the Texas Legislature included *complex or specialized* wheelchair components within the scope of DME coverage. TEX. HUM. RES. CODE § 32.0425. Because this component meets HHSC's definition of DME, as well as state law defining custom wheelchairs, the trial court correctly reversed HHSC's erroneous determination that the recommended standing feature is not covered by Medicaid. HHSC's argument to the contrary is wrong.

**B.      Linda Puglisi's Medical Need for the Recommended Wheelchair is not Diminished by the Severity of her Disability.**

HHSC tries to make much of the fact that Linda requires assistance from caregivers to perform certain activities of daily living (ADLs) due to her spinal cord injury.[1] However, HHSC cannot lawfully deny Linda's request for a standing wheelchair based upon the severity of her disability. 42 U.S.C. § 1396a(a)(10)(B); 42 C.F.R. § 440.240(b); *See Lankford v. Sherman,* 451 F.3d 496 (8th Cir. 2006) (comparability requirement violated when state covers items of DME for certain individuals with disabilities but not for others.) In fact, HHSC's administrative decisions specifically note that Linda was able to "maneuver and operate" the

---

[1] Linda has never denied her need for physical assistance from caregivers. But, as found by HHSC's Hearing Officer, "[a]ppellant is able to move her hands and fingers and requires the use of sling arm supports to facilitate some ADLs." Appellant's Brief, App. 2, AR 334, FOF 9.

3

recommended wheelchair and was able to independently stand numerous times during her evaluation with the use of the integrated standing feature. Appellant's Brief, App. 2, AR 334, FOF No. 3;  App.3, AR 344, FOF No. 4.  These decisions also found that Linda cannot independently transfer to a separate stander, a fact that supports rather than negates her medical need for an integrated standing feature on her wheelchair.  Appellant's Brief, App. 2, AR 334, FOF No.10; Appellant's Brief,  App.3, AR 344, FOF No. 9. Nothing in the administrative record disputes Linda's ability to independently stand with the recommended wheelchair as needed to ameliorate the pain and associated medical conditions she experiences from prolonged sitting each day.

HHSC's argument concerning medical necessity of the integrated standing feature finds no support in the agency's decisions and has no merit before this Court.  Neither the agency's hearing officer nor its reviewing attorney made any findings concerning the integrated standing feature that refute the professional opinion of Linda's medical providers that the recommended wheelchair will correct or ameliorate many of the medical conditions she faces and will serve one or more specific medical purposes for her.

## C. State Law Governing the Order of Payment for Dually-Eligible Beneficiaries Has no Bearing on this Case.

HHSC asserts that, as a state agency, it cannot easily disregard it obligation to comply with TEX. HUM. RES. CODE § 32.0424; TEX. HUM. RES. CODE §

4

32.050(b) and 1 TEX. ADMIN. CODE § 354.1041, yet nothing about the trial court's decision requires it to do so. Each of these provisions relate to *payment* for services provided to individuals who are dually eligible for Medicare and Medicaid, but as previously explained, this case is about Medicaid prior authorization and not the payment of claims or the order of payment between Medicare and Medicaid.[2] Appellee's Brief, pp. 11-16.

HHSC's erroneous assertions concerning the Texas Medicaid Provider's Procedure Manual (TMPPM) is simply more of the same. Importantly, the excerpt HHSC now quotes from TMPPM §2.3.1.2 no longer represents current policy. Appellant's Reply Brief, App. 14. This policy now states that "[f]or eligible Medicare/Medicaid clients, Medicare is the primary payer and providers must bill Medicare before submitting a claim to Medicaid." Appellee's Sur-Reply, App. 9. Like HHSC's other legal references, this policy is inapplicable to the case before this Court as it relates to payment for services already provided to the beneficiary and not prior authorization of requested services. As explained in Appellee's Brief, pp. 13-14, this case is only about Medicaid prior authorization of the recommended wheelchair and not about payment for the wheelchair - - two very

---

[2] Similarly, TMPPM §2.3.1.3 references the MRAN or Medicare Remittance Advisory Notice. The MRAN is a notice of payments and adjustments sent to the DME supplier by Medicare only after a service is provided and a claim is submitted to Medicare for payment.

different steps in HHSC's four step process for obtaining an item of DME from Texas Medicaid.

Contrary to HHSC's assertion, no one expects Texas Medicaid to "provide prior authorizations of DME for a Federal Medicare program or vise versa." Appellant's Reply Brief, p. 5. Clearly, HHSC's only authority is to grant Medicaid prior authorization for the recommended wheelchair. Given the agency's failure to do so, the trial court correctly determined that Linda was entitled to Medicaid prior authorization of the recommended wheelchair and ordered HHSC to act in accordance with this determination.

## D. HHSC's Hearing Decision is Unsupported by Substantial Evidence.

HHSC accuses Linda of "subverting" the substantial evidence standard of review while completely disregarding several salient facts concerning the administrative record. First, at the fair hearing, Molina Healthcare of Texas (Molina) had the burden to prove that the documentation provided by Linda's medical providers did not establish her medical need for the recommended wheelchair and that its reasons for denial were correct. Yet, Molina admitted it did not apply Texas Medicaid's medical necessity standards, as established in agency rule and policy, and offered no medical evidence to support its denial. Appellee's Brief, p.27-28. Second, Molina provided no written or oral testimony from a physician or therapist that refuted the professional opinions of Linda's well-

6

qualified medical providers concerning the secondary complications she faces and and her need to stand throughout the day to ameliorate these numerous medical conditions. To be clear, the administrative record contains no medical opinion that disputes Linda's medical need to stand or her inability to independently use a separate stander. Third, neither HHSC's hearing officer nor reviewing attorney issued a single finding of fact that refutes the evidence provided by Linda's medical providers as to her medical need for the recommended wheelchair. Finally, HHSC's administrative decisions do not even address Linda's medical need for the integrated standing feature at issue in this case.

Throughout this case, Linda has consistently identified credible and probative evidence from the administrative record establishing the numerous medical conditions she faces due to her disability and her medical need for the custom power wheelchair recommended by her medical professionals. HHSC must do more than assert that "there is more than a mere scintilla of evidence in the record to support the Hearing Officer's and Reviewing Attorney's findings and conclusion." Appellant's Reply Brief, p. 7. The agency must identify credible medical evidence in the administrative record that supports Molina's reasons for denying this wheelchair. HHSC's failure to do so results from the fact the administrative record is devoid of any such evidence.

**E.** **Neither *Detgen* nor the *DeSario* Letter Supports HHSC's Hearing Decision in this Case.**

HHSC begins this confounding argument by claiming that Linda has failed to assert a "private right to a mobile stander" and that she "cannot claim a private right" to this DME. Appellant's Reply Brief pp. 7-8. To the extent HHSC is now stating that Linda has no right to even request an item of DME the agency's designee (TMHP) has categorically excluded from Medicaid coverage, such argument has no merit.

Linda Puglisi is an eligible Medicaid beneficiary who is entitled to DME through the home health benefit when the item requested is covered by Medicaid and is medically necessary for her. These two issues - Medicaid coverage of the integrated standing feature and Linda's medical need for this wheelchair component - have been fully addressed in Appellee's Brief pp. 22-44. As to Medicaid coverage of the standing feature, Linda has previously explained why the *Detgen* decision is not controlling here, particularly in light of the fact that the Texas Legislature chose to include *complex or specialized* components like the standing feature at issue in this case in its definition of the custom wheelchair benefit.[3] TEX. HUM. RES. CODE § 32.0425.

---

[3] HHSC's reliance on the district court decision in *Detgen* is also misplaced. 945 F. Supp. 2d. 746 (N.D. Tex. 2013) There, the court erroneously assumed that federal funding was unavailable for ceiling lifts, as claimed by HHSC. CMS's letter to the agency on May 21, 2013, corrected this error. While the availability of federal funding for wheelchair standing features is not at

8

Moreover, *Detgen* is inapplicable because the administrative record contains no evidence from a qualified medical provider that there is a less costly, equally effective alternative item of DME that will meet Linda's medical need to stand throughout the day when she is faced with the pain and other medical complications that occur due to prolonged sitting.[4]  Unlike the Fifth Circuit's finding in *Detgen* concerning ceiling lifts, HHSC's exclusion of wheelchair standing features means the state has denied Linda a medically necessary device for which there is no alternative that will meet her medical needs.  And as explained in *Lankford v. Sherman*, 451 F.3d 496, 511 (8th Cir. 2006), "[a] state's failure to provide Medicaid coverage for non-experimental, medically necessary services within a covered Medicaid category is both per se unreasonable and inconsistent with the stated goals of Medicaid."

The *DeSario* Letter also provides no support for HHSC's categorical exclusion of standing wheelchair features.  As previously explained, CMS has made clear that states must provide Medicaid beneficiaries a reasonable and meaningful  process by which items of medical equipment will be judged for coverage.  Pursuant to 1 TEX. ADMIN. CODE § 354.1039(a)(4)(D), medical

---

issue in this case, CMS has been clear that federal funding is available when an item of medical equipment meets the state's definition of DME. Appellee's Brief, App. 1.

[4] As previously noted, the administrative record contains no medical evidence establishing that a separate stander is "equally effective" for Linda and her evidence to the contrary demonstrates that she cannot use a separate stander when she has no access to caregivers.  Moreover, the record contains no evidence as to whether a separate stander would be less costly as this argument was not made by Molina in the administrative proceeding.

equipment may be provided when it is medically substantiated that the requested item would "*serve a specific medical purpose on an individual case basis*." (Emphasis added.) Here, both Molina and HHSC failed to apply this standard to Linda's wheelchair request.[5] HHSC cannot escape this critical error by claiming that "Puglisi never requested exceptional circumstances review." Appellant's Reply Brief. p.8. Both Molina and HHSC were required to apply the correct medical necessity standards in this case and and they failed to do so.

**F.** **HHSC Denied Linda Puglisi's Due Process Rights.**

HHSC does not specifically respond to Linda Puglisi's assertions concerning the deprivation of her due process rights other than to state that the "clear solution is to remand this case to Molina and begin due process anew." HHSC Reply Brief, p. 11. This callous response ignores the fact that it has been more than two years since Linda Puglisi first sought Medicaid prior authorization of the medically necessary power wheelchair recommended by her treating medical providers and that she has been without this necessary equipment throughout this period of time. Remanding this case and requiring Linda to begin this protracted process over again because of the errors committed by Molina and HHSC is not due process. To the contrary, this Court should affirm the trial court's reversal of HHSC's

---

[5] When asked in discovery whether an exceptional circumstances review of Linda's prior authorization request had been conducted, Molina objected to the question and provided no response. AR 327, Response to Interrogatories No. 10 and 11.

flawed administrative decision as this decision is based upon grounds that were never asserted by Molina in its denial notice to Linda Puglisi. This is the necessary remedy for the violation of Linda Puglisi's due process rights.

## PRAYER

Appellee, Linda Puglisi, respectfully requests this Court to affirm the trial court's decision in her favor and to grant any other relief to which she may be entitled.

Respectfully Submitted,

/s/ Maureen O'Connell
MAUREEN O'CONNELL
Texas Bar No. 00795949
SOUTHERN DISABILITY LAW CENTER
1307 Payne Avenue
Austin, Texas 78757
(512) 458-4800 (Phone)
(512) 458-5850 (Fax)
moconnell458@gmail.com

*Attorney for Appellee*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(2)(B) because it contains 2,344 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

2. This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/ Maureen O'Connell
MAUREEN O'CONNELL

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of August, 2015, a true and correct copy of the foregoing document was electronically filed, and that a true and correct copy of the foregoing document was served by electronic mail on the same date to:

Eugene Clayborn
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711

/s/ Maureen O'Connell
MAUREEN O'CONNELL

**No. 03-15-00226-CV**

_____

IN THE
THIRD COURT OF APPEALS
AUSTIN, TEXAS

_____

TEXAS HEALTH AND HUMAN SERVICES COMMISSION,
                                                        *Appellant,*


v.


LINDA PUGLISI,

                                                        *Appellee.*

_____

On Appeal From
The 53rd Judicial District Court of Travis County, Texas
Trial Court Case No. D-1-GN-14-000381
The Honorable Judge Gisela D. Trianna

_____

**APPELLEE'S APPENDIX**

_____

MAUREEN O'CONNELL
Texas Bar No. 00795949
SOUTHERN DISABILITY LAW CENTER
1307 Payne Avenue
Austin, Texas 78757
T: 512.458.5800
F: 512.458.5850
moconnell458@gmail.com

*Attorney for Appellee*

# APPENDIX INDEX

Texas Medicaid Provider's Procedure Manual.................................................. Tab 9

# TAB 9

## 2.3.1.2    Benefits for Medicare and Medicaid Clients

For eligible Medicare/Medicaid clients, Medicare is the primary payer and providers must bill Medicare before submitting a claim to Medicaid. Medicaid pays the Medicare deductible on Part B claims for qualified home health clients.

Home health service prior authorizations may be given for HHA services, certain medical supplies, equipment, or appliances suitable for use in the home in one of the following instances:

- When an eligible Medicaid client (enrolled in Medicare) who does not qualify for home health services under Medicare because SN care, PT, or OT are not a part of the client's care.

- When the medical supplies, equipment, or appliances are denied by Medicare Part B and are a benefit of Home Health Services.

Federal and state laws require the use of Medicaid funds for the payment of most medical services only after all reasonable measures have been made to use a client's third party resources or other insurance.

> *Note:* *If the client has Medicare Part B coverage, contact Medicare for prior authorization require-ments and reimbursement. If the service is a Part B benefit, do not contact TMHP for prior authorization. Texas Medicaid will only pay the deductible and coinsurance according to current payment guidelines on the electronic crossover claim.*

TMHP will not prior authorize or reimburse the difference between the Medicare payment and the retail price for Medicare Part B eligible clients.

> *Refer to:* Subsection 4.12, "Third Party Liability (TPL)" in Section 4, "Client Eligibility" (*Vol. 1, General Information*).
>
> Section 2.7, "Medicare Crossover Claim Reimbursement" (*Vol. 1, General Information*).

## 2.3.1.3    Medicare and Medicaid Prior Authorization

Contact TMHP for prior authorization of Medicaid services (based on medical necessity and benefits of Home Health Services) within 30 days of the date on the MRAN.

> *Note:* *For MQMB clients, do not submit prior authorization requests to TMHP if the Medicare denial reason states "not medically necessary." Medicaid only will consider prior authori-zation requests if the Medicare denial states "not a benefit" of Medicare.*

Qualified Medicare Beneficiaries (QMB) are not eligible for Medicaid benefits. Texas Medicaid is only responsible for premiums, coinsurance, or deductibles on these clients according to payment guidelines. Providers should not submit prior authorization requests to the TMHP Home Health Services Prior Authorization Department for these clients.

To ensure Medicare benefits are used first in accordance with Texas Medicaid regulations, the following procedures apply when requesting Medicaid prior authorization and payment of home health services for clients.

Contact TMHP for prior authorization of Medicaid services (based on medical necessity and benefits of Home Health Services) within 30 days of the date on the MRAN. Fax a copy of the original Medicare MRAN and the Medicare appeal review letter to the TMHP Home Health Services Prior Authorization Department for prior authorization.

> *Note:* *Claims for STAR+PLUS MQMB clients (those with Medicare and Medicaid) must always be submitted to TMHP as noted on these pages. The STAR+PLUS health plan is not responsible for these services if Medicare denies the service as not a benefit.*

When the client is 65 years of age and older or appears otherwise eligible for Medicare such as blind and disabled, but has no Part A or Part B Medicare, the TMHP Home Health Services Prior Authorization Department uses regular prior authorization procedures. In this situation, the claim is held for a midyear

CPT ONLY - COPYRIGHT 2014 AMERICAN MEDICAL ASSOCIATION. ALL RIGHTS RESERVED.

status determined by HHSC. The maximum length of time a claim may be held in a "pending status" for Medicare determination is 120 days. After the waiting period, the claim is paid or denied. If denied, the EOB code on the R&S report indicates that Medicare is to be billed.

> **Refer to:** Subsection 3.2.3, "Home Health Skilled Nursing Services" in the *Nursing and Therapy Services Handbook* (*Vol. 2, Provider Handbooks*).

## 2.4 Claims Filing and Reimbursement

### 2.4.1 Claims Information

Providers must use only type of bill (TOB) 321 in Form Locator (FL) 4 of the UB-04 CMS-1450. Other TOBs are invalid and result in claim denial.

Home Health services must be submitted to TMHP in an approved electronic format or on a CMS-1500 or a UB-04 CMS-1450 paper claim form. Submit home health DME and medical supplies to TMHP in an approved electronic format, or on a CMS-1500 or on a UB-04 CMS-1450 paper claim form. Providers may purchase UB-04 CMS-1450 and CMS-1500 paper claim forms from the vendor of their choice. TMHP does not supply them.

When completing a CMS-1500 or a UB-04 CMS 1450 paper claim form, providers must include all required information on the claim, as TMHP does not key information from attachments. Superbills, or itemized statements, are not accepted as claim supplements.

> **Refer to:** Section 3: TMHP Electronic Data Interchange (EDI) (*Vol. 1, General Information*) for information on electronic claims submissions.
>
> Section 6: Claims Filing (*Vol. 1, General Information*) for general information about claims filing.
>
> Subsection 6.6, "UB-04 CMS-1450 Paper Claim Filing Instructions" in Section 6, "Claims Filing" (*Vol. 1, General Information*).
>
> Subsection 6.5, "CMS-1500 Paper Claim Filing Instructions" in Section 6, "Claims Filing" (*Vol. 1, General Information*) for instructions on completing paper claims.

Outpatient claims must have the appropriate revenue code and, if appropriate, the corresponding HCPCS code or narrative description. The prior authorization number must appear on the UB-04 CMS-1450 claim in Block 63 and in Block 23 of the CMS-1500 claim. The certification dates or the revised request date on the POC must coincide with the DOS on the claim. Prior authorization does not waive the 95-day filing deadline requirement.

#### 2.4.1.1 Benefit Code

Home health DME providers must use benefit code DM2 on all claims and authorization requests. All other providers must use benefit code CSN on all claims and authorization requests.

### 2.4.2 Reimbursement

DME and expendable medical supplies are reimbursed in accordance with 1 TAC §355.8021. Providers can refer to the Online Fee Lookup (OFL) or the applicable fee schedule on the TMHP website at www.tmhp.com. Providers may also request a hard copy of the fee schedule by contacting the TMHP Contact Center at 1-800-925-9126.

DME and expendable supplies, other than nutritional products, that have no established fee, are subject to manual pricing at the documented MSRP less 18 percent or the provider's documented invoice cost.

Nutritional products that have no established fee are subject to manual pricing at the documented AWP less 10.5 percent or at the provider's documented invoice cost.

CPT ONLY - COPYRIGHT 2014 AMERICAN MEDICAL ASSOCIATION. ALL RIGHTS RESERVED.